PER CURIAM.
In this multi-count civil action for breach ‘of agreement, alter ego and accounting, the petitioners, Exit 242 Tourist Information Center, Inc. and Jonathan Broner, who were defendants below, seek certiora-ri review of the trial court’s order, which in pertinent part granted the motion of Florida’s Room Service, Inc. to compel discovery with regard to the production of certain documents and papers.
According to the amended complaint, Florida’s Room Service, Inc. is in the business of selling tourist attraction tickets, providing vouchers for discount lodging, making reservations for such lodging, and soliciting time share tours. Several years ago, Florida’s Room Service and Broner allegedly began to discuss establishing a business near exit 242 along the Florida Turnpike. Both parties agreed that Broner would form a corporation to be known as Exit 242 Tourist Information Center, Inc. and locate its offices on the premises of the Osceola Flea Market at that exit off the Florida Turnpike. The agreements between the parties included among other things: (a) payment to Florida’s Room Service of 10% of all net profits for sales derived from Exit 242’s operations; (b) payment of a 15% commission on gross billboard billing; (c) control by Florida’s Room Service of hotel bookings; and (d) booking of all timeshare tours through Florida’s Room Service.
Initially, the parties continued to perform under their agreements with each other. However, beginning in November 1997, Exit 242 allegedly ceased paying to Florida’s Room Service the 15% billboard rental commissions, a fact not discovered until later. Florida’s Room Service also began to become suspicious of the profit and loss statements provided by Exit 242; some were not furnished at all. Broner and Exit 242 also wrested control of the billboards from Florida’s Room Service and secretly obtained the timeshare desk at a Best Western hotel, when under the agreements such desks were to be held by Florida’s Room Service and leased back to Exit 242. Finally, on June 9, 1998, Broner wrote a termination letter to Florida’s Room Service, terminating the agreements between the parties.
Florida’s Room Service’s amended complaint against Broner and Exit 242 includes three counts. Count I is for breach of contract with regard to the agreements between the parties. Count II alleges an alter ego theory under which Broner and Exit 242 are “in essence the same entity.” It is alleged that Broner “used and controlled” Exit 242 in breaching the agreements between the parties and in “concealing the income and profits” of Exit 242. *1285 Finally, in count III, Florida’s Room Service alleges that it is entitled to an accounting against Broner and Exit 242 of all the financial affairs of Broner and Exit 242 in light of the agreements between the parties and the alleged concealment of income and profits.
Ultimately, Florida’s Room Service served on Exit 242 and Broner its request for production, which sought certain documents and materials, between the time frame of January 1, 1996 (when the parties began to do business with each other) through the date of the request, August 16, 2000. Specifically, petitioners were requested to produce all ledgers, books of account, canceled checks, check registers, financial statements, loan applications, bank statements, and/or statements of financial institutions of any kind for petitioners “and any entity in which Exit 242 Tourist Information Center, Inc. or Jonathan Broner has any interest, legal or equitable.” They were also requested to produce sales tax returns, corporate records, all income tax returns, any and all leases for time-share sales, and any and all contracts or agreements for the sale of attraction tickets or vouchers for any entity in which either of the petitioners had any legal or equitable interest. When the documents and materials sought in the request to produce were not forthcoming, Florida’s Room Service filed a motion to compel production. After a hearing, the trial court in its order granted the motion to compel. Exit 242 and Broner now seek certiorari review of the trial court’s order.
While we find no basis to disturb the order as to Exit 242, the sole basis for the foray into the personal business of Broner is Count II of the complaint which alleges that he was the “sole shareholder and person in control of Exit 242” and that he “directly participated in the breaches of Exit 242’s agreement with Florida Room Service, Inc.” and in concealing income and profits of Exit 242. These allegations do not state a cause of action and would not support a personal judgment against Broner. There is also an additional allegar tion that Broner “used and controlled Exit 242 for the purpose of defrauding the plaintiff’ but the only causes of action pleaded are breach of a contract to which Broner is not a party and a claim for an accounting under that contract. There are no facts to support the conclusory allegation, of fraud. Until the. complaint sets forth a cognizable claim, properly pleaded, that would support a judgment against Broner, discovery of such extensive and intrusive financial records is improper.
Accordingly, we grant the petition in regard to the individual petitioner, Broner; and quash the discovery order in regard to him; we deny the petition in respect to the corporate petitioner.
GRANTED IN PART; DENIED IN PART.
THOMPSON, C.J., COBB and GRIFFIN, JJ., concur.